614 So.2d 918 (1992)
DIXIE INSURANCE COMPANY
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 89-CA-0565.
Supreme Court of Mississippi.
December 31, 1992.
Rehearing Denied April 8, 1993.
*919 John W. Land, Bryan Nelson Randolph Land & Weathers, Hattiesburg, for appellant.
Edward J. Currie, Jr., Steen Reynolds Dalehite & Currie, Michael F. Myers, Steen Reynolds Firm, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:

I. INTRODUCTION
The issue addressed in this appeal is whether the host driver's uninsured or underinsured motorist (UM) insurer, State Farm Mutual Automobile Insurance Company (State Farm), or the injured's own UM insurer, Dixie Insurance Company (Dixie), is entitled to take the liability insurance offset. The Copiah County Circuit Court upheld State Farm's contractual offset provision and ordered Dixie to pay $10,000 in UM coverage to its insured. Dixie appealed and raised the following issues:
Whether the insured should have received $10,000 instead of $14,860.34 in UM compensation?
Whether State Farm, as the host driver's insurer, should have been required to exhaust its UM coverage before Dixie, as the injured's insurer, made any UM payment?
Whether, alternatively, State Farm and Dixie should have been allowed to prorate the $25,000 offset?

A. Facts
The parties stipulated to the facts recited here. On May 28, 1984, driver Glenn Hurst and guest-passenger Donald B. Cannon (and two other guest passengers) travelled toward Rockport, Texas, when Hurst negligently drove off the highway and wrecked. "As a proximate result of the accident the plaintiff [Cannon] received injuries and other damages. Actual damages which [Cannon] has suffered as a proximate result of the accident exceed[ed] the sum of $35,000.00."
Hurst's insurer, State Farm, provided liability coverage of $25,000 per person and $50,000 per accident and UM coverage of $25,000 per person and $50,000 per accident. Cannon's insurer, Dixie, provided UM coverage of $10,000. State Farm settled with Cannon, vis-a-vis liability coverage, and paid him $20,193.66. This payment, in addition to the settlement payments to Hurst's other guest passengers, exhausted State Farm's "per accident" limit.

B. Procedural History
On May 15, 1986, Cannon filed a complaint against State Farm and Dixie  demanding additional payment under the policies' UM-coverage provisions. Cannon explained that the $20,193.66 which he collected under the liability-coverage provision of Hurst's policy did not adequately compensate him. Cannon thus contended that he was entitled to $25,000 from State Farm and $10,000 from Dixie under UM-coverage provisions. See Miss. Code Ann. § 83-11-103(c)(iii) (1972).
On August 3, 1988, the trial judge determined that State Farm was liable for $25,000.00 under its UM-coverage provision; however, the judge permitted State Farm to offset that amount ($25,000) by the amount ($20,193.66) which it had paid under its liability-coverage provision. The offset left State Farm with a balance of $4,806.34 of UM coverage. The judge based his decision on ¶ 3.A(1)(b) of State Farm's policy:

*920 B. UNINSURED MOTOR VEHICLE  COVERAGE U1
(Damages for Bodily Injury or Property Damage Caused by Uninsured Motor Vehicles).
... .
Limits of Liability... .
... .
3. Bodily and Property Damage
A. Any amount payable under this section for bodily injury shall be reduced by:
(1) any amount paid or payable to or for the insured:

...
(b) for bodily injury under the liability coverage of this policy... .
The judge then ordered Dixie to pay Cannon $10,000 under its UM coverage for its insured. The following is a summary of the judge's order:

 Policy Coverages Amount of Coverage Payment
 State Farm liability $25,000.00 $20,193.66
 State Farm UM 25,000.00 4,806.34
 Dixie UM 10,000.00 10,000.00
 ----------
 Totally coverage $35,000.00
 ==========

Dixie moved to amend the order and, alternatively, requested a new trial. The judge denied the motion, and Dixie appealed.

II. ANALYSIS
As a threshold issue, the Court must verify Hurst's status as a UM before addressing the issue of whose UM coverage should be tapped and to what extent. Under Mississippi law, "stacking is allowed for the purpose of qualifying the tortfeasor as [a UM]." Wickline v. U.S. Fidelity & Guar. Co., 530 So.2d 708, 713 (Miss. 1988).[1] As explained in Wickline:
If [a person] is injured while riding as a passenger, the [UM] coverage of the vehicle in which he is riding, in addition to that of his own vehicles, is "applicable to the injured person."
530 So.2d at 713. If the aggregated or "stacked" amount exceeds the tortfeasor's bodily injury liability coverage, the tortfeasor qualifies as a UM and the injured party may recover under the UM policy provision. Id.
As a matter of policy,
On numerous occasions this Court has observed that [UM] insurance is designed to provide innocent injured motorists a means of compensation for injuries which they receive at the hands of an UM . .. and this Court has further noted that the Uninsured Motorist Act must be liberally construed to achieve this purpose.
Id. at 711 (citations omitted). In Cossitt v. Federated Guar. Mut. Ins. Co., 541 So.2d 436, 440 (Miss. 1989), this Court explained that determination of whether a person is "uninsured" is made solely by comparing policy limits  that is, the liability limit of the tortfeasor compared to the UM limit applicable to the injured party. See also *921 Washington v. Georgia American Ins. Co., 540 So.2d 22, 25 (Miss. 1989). Thus, where a tortfeasor and an injured guest passenger carry liability insurance with matching limits, "the insured is not entitled to [UM] coverage under the statute, but it entitled to the liability limits ... under the tortfeasor's liability policy."
In this case, both parties agree that Hurst qualifies as a UM. Using the Wickline rule, Cannon's UM limit of $10,000 added to Hurst's UM limit of $25,000 exceeds Hurst's bodily injury liability limit of $25,000. Thus, Cannon may recover under the un(der)insured-coverage provisions applicable to him. Since the parties agree on the amount of Cannon's damages, the question becomes one of determining which amounts from which policies should compose Cannon's award.

A. Whether the plaintiff should have received $10,000 instead of $14,860.34 in UM compensation from both policies?
Dixie claims that the compensation scheme had the effect of allowing Cannon more UM coverage than the combined Dixie and State Farm policies offered. Dixie asserts that Cannon was paid an amount equivalent to $39,806.34 in UM coverage when only $35,000.00 was provided. However, State Farm was ordered to pay UM coverage of $25,000, [less an offset entitlement, from liability payment of $20,193.66, or a balance of $4,806.34.] Dixie was ordered to pay UM coverage of $10,000. Thus, Dixie contends that Cannon received an excess payment of UM coverage as follows:

 $25,000.00 (State Farm Liability Coverage)
 4,806.34 (State Farm UM Coverage)
 10,000.00 (Dixie UM Coverage)
 -----------
 $39,806.34 TOTAL

Dixie's claim that Cannon has been paid "an amount equivalent to $39,806.34 in [UM] coverage" is devoid of factual support. Cannon received $14,806.34 in UM coverage out of an available $35,000. The tortfeasor's bodily injury liability coverage provided only $20,193.66 of Cannon's total compensation, not $25,000. Thus, Cannon's actual receipt totaled $35,000  not $39,806.34.

B. Whether State Farm, as the host driver's insurer, should have been required to exhaust its UM coverage before Dixie made any UM payment or, in the alternative, whether State Farm and Dixie should have been allowed to pro-rate the $25,000 offset?
Dixie urges that its policy of insurance is the injured party's own insurer and that State Farm, as the host driver's UM insurer, would be the primary insurer. Mississippi Farm Bureau Mut. Ins. Co. v. Garrett, 487 So.2d 1320, 1321 (Miss. 1986). Dixie's position is that the host driver's insurer (State Farm) should pay before the excess insurer (Dixie) would be ordered to pay. In this case, Dixie asserts that State Farm should be required to pay the full $10,000 UM coverage before Cannon can resort to his own UM coverage. "Primary/excess insurance principles deal with who pays first." Appellant's Brief at 7.
This argument addresses the problem that has arisen in interpreting language in an insurance policy (other than life insurance), referred to as "other insurance" clauses, which were designed to prevent claims by overinsuring. The problem arises when multiple insurance coverages exists. The practice of the insurers is described in the following manner:
There are three basic types of other insurance clauses which regulate how liability is to be divided when multiple coverage exists. The first, a "pro-rata" clause, limits the liability of an insurer to a proportion of the total loss. The second, an "escape" clause, seeks to avoid all liability. The third, an "excess" clause ... provides that the insurance will only be excess. See 8 J. Appleman, Insurance Law and Practice § 4911 (Cum.Supp. 1973); 7 Am.Jur.2d Automobile Insurance §§ 200-02 (2d ed. 1963).
Carriers Ins. Co. v. American Policyholders' Ins. Co., 404 A.2d 216 (Me. 1979); see also 76 A.L.R.2d 502 (1961); 46 A.L.R.2d 1163, 1167 (1956); 69 A.L.R.2d 1122 (1960). The insurance industry has tried, by drafting *922 specific policy provisions, to place the initial loss on other applicable insurers.
"[C]ourts have had to consider language in insurance policies denying coverage for a loss because of the existence of one or more additional policies." This situation, which is both common and exceedingly difficult to resolve, was humorously described by the Third Circuit Court of Appeals.

Restaurateurs are familiar with the good-natured struggles which often ensue when guests attempt to pick up the tab for their dinner companions. It may be fanciful to assume that it was to avoid similar unseemly displays when the time came to pay a casualty loss that insurance companies incorporated "other insurance clauses" in their policies. Certainly, there is one dramatic difference between those generous diners, would-be hosts, and the insurers  the diner pleads for the opportunity to pay the bill; the insurer's use of the "other insurance" clause is designed to confer that honor on the other company.
Alleman, Resolving the "Other Insurance" Dilemma: Ordering Disputes Among Primary and Excess Policies," 1981 Kan.L.Rev. 75.
This Court has resolved coverage questions by applying the Mississippi Motor Vehicle Safety Responsibility Act (Miss. Code Ann. § 83-11-101, et seq. (1972) as amended), and the language of the particular insurance policy involved, together with policy considerations. See Thiac v. State Farm Automobile Ins. Co., 569 So.2d 1217 (Miss. 1990); Cossitt v. Nationwide Mut. Ins. Co., 551 So.2d 879 (Miss. 1989); Brown v. Maryland Cas. Co., 521 So.2d 854 (Miss. 1987); State Farm Mut. Automobile Ins. Co. v. Kuehling, 475 So.2d 1159 (Miss. 1985); Government Employees Ins. Co. v. Brown, 446 So.2d 1002 (Miss. 1984).
This Court has consistently held that an insurer may not diminish the mandated statutory requirements. Mississippi Farm Bureau Mut. Ins. Co. v. Garrett, 487 So.2d 1320, 1323 (Miss. 1986); State Farm Mut. Automobile Ins. Co. v. Kuehling, 475 So.2d 1159, 1161 (Miss. 1985); Talbot v. State Farm Mut. Automobile Ins. Co., 291 So.2d 699, 703 (Miss. 1974). Likewise, our cases provide for the freedom of the insurer and the insured to contract so long as the mandatory statutory requirements are not circumvented. Casualty Reciprocal Exchange v. Federal Ins. Co., 608 So.2d 1258, 1259 (Miss. 1972); Wickline v. United States Fidelity & Guar. Co., 530 So.2d 708, 717 (Miss. 1988).
This Court addressed "other available insurance" policy language in Mississippi Farm Bureau Mut. Ins. Co. v. Garrett, 487 So.2d 1320, 1323 (Miss. 1986), in light of our UM statute and prior case law. There, this Court upheld the contractual language between the insurer and the insured. Likewise, in the instant case, the trial court upheld similar contractual language and this Court now affirms.
Pursuant to the holding of State Farm Mutual Auto. Ins. Co. v. Kuehling, 475 So.2d 1159, 1163 (Miss. 1985), a policy may, by its language, "provide[] for offsets of the [UM] coverage by amounts paid by the tortfeasor's carrier... ." Applying that rule to this case, one could say that, to the extent of $20,193.66, State Farm provided liability insurance of $25,000 and cannot be considered wholly uninsured. Subtracting or offsetting, $20,193.66 from $25,000, the court correctly arrived at an uninsured liability due from State Farm of $4,806.34.
Dixie, however, had a similar offset provision in its policy. Dixie contends that, at any rate, the trial judge should have required State Farm to exhaust its UM coverage before requiring Dixie to make any payment. Nothing in Mississippi law requires such an arrangement where a policy provision provides otherwise.
Because Dixie's policy only allows it to offset amounts actually paid by it, Dixie is not entitled to the benefit of the offset first. Chicago Ins. Co. v. Lumberman's Mut. Cas. Co., 503 So.2d 916 (Fla.App. 1987); Georgia Farm Bureau Mut. Ins. Co. v. State Farm Mut. Automobile Ins. Co., 255 Ga. 166, 336 S.E.2d 237 (1985). The trial court correctly held that the primary insurer was entitled to offset first.
*923 As to the argument that pro-ration of their coverages should have been allowed, Dixie argues that to permit the primary insurer to offset the liability coverage allows State Farm to escape liability under its UM coverage. Dixie, therefore, argues alternatively that State Farm and it should be allowed to pro-rate the amount of UM coverage.
In view of the Garrett analysis, this Court holds that the trial judge acted properly in denying pro-ration of the offset provision of the primary insurer's policy of insurance. Because Dixie's policy only allows it to offset amounts actually paid under any liability coverage, Dixie is not entitled to offset the liability policy limits. The trial judge's decision is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PITTMAN, BANKS and ROBERTS, JJ., concur.
McRAE, J., dissents by separate written opinion, joined by DAN M. LEE, P.J., and SULLIVAN, J.
McRAE, Justice, dissenting:
Because I believe that a litigant, whether an individual or an insurance company, should receive fair and equal treatment under the law, I dissent. Our entire uninsured motorist statute is incorporated within all uninsured/underinsured motorist policies written in this State. This includes Miss. Code Ann. § 83-11-107, which allows an insurance company to subrogate amounts paid to its insured under his UM policy. In relevant part, the statute provides:
An insurer paying a claim under the endorsements or provisions required by section 83-11-101 shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death, or damage to the extent that payment was made, including the proceeds recoverable from the assets of the insolvent insurer.
The majority, in effect, disregards Dixie's right to subrogation by finding that the trial court correctly allowed State Farm an offset entitlement for the $20,193.66 it paid to Cannon under the host driver's liability insurance policy. Nowhere in the statute is State Farm provided with the authority to offset its liability coverage; however, to the contrary, provision is made for an insurer in Dixie's shoes to do so. The statute takes precedence over any contrary provisions an insurer may adopt. Thus, State Farm should be entitled to a credit only for the $4,806.34 paid under its insured's UM policy.
Insurance is a simple matter. The insured pays a specified premium in return for protection against the occurrence of certain events. However, this basic principle has been greatly complicated by the insurance industry's propensity to add deflective policy provisions, such as that drafted by State Farm, which serve to channel liability away from the insurer, much to the consternation of its insureds and the public at large.
In the 1960s, there ensued a movement to make liability insurance compulsory, which was rejected by the insurance industry. Insurance carriers instead urged the creation of a separate contract for its insureds. The insurance industry argued that it would rather write a separate policy for its "good insureds" to provide them with better protection than they would receive were the industry forced to write policies under a compulsory insurance law. Thus UM coverage was developed to protect responsible motorists from the costs of damages and injuries caused by uninsured drivers. Wickline v. U.S. Fidelity & Guaranty Co., 530 So.2d 708, 711 (Miss. 1988). By statute, any liability insurance policy issued in this state is required to contain an endorsement or provision that the insurer must compensate the insured for damages, within specified limits, which he is legally entitled to recover from an uninsured motorist. Miss. Code Ann. § 83-11-101. We have emphasized that the UM contract is personal to the insured, citing the insurance commentator Appleman for the proposition that:
It has properly been stated that uninsured motorist protection is not coverage *924 for vehicles but for persons, even though it is contained within a policy otherwise insuring an automobile and that it would be unconscionable to permit an insurer to collect premiums on the one hand and remove the protection with the other by redefining "insured" under the UM coverages.
State Farm Mutual Insurance Co. v. Nester, 459 So.2d 787, 793 (Miss. 1984) quoting Appleman, Insurance Law and Practice § 5080. Although a UM contract is attached to an insured's liability insurance coverage, it is a separate and distinct contract for which he pays an additional premium for UM coverage. Likewise, we have treated UM coverage as a creature separate and distinct from liability insurance, for example, precluding an injured insured from recovering punitive damages under his UM policy, State Farm Mutual Automobile Insurance Co. v. Daughdrill, 474 So.2d 1048, 1052 (Miss. 1985), where we have allowed them under an automobile liability policy. Anthony v. Frith, 394 So.2d 867, 868 (Miss. 1981). Why then should liability and uninsured motorist coverage not be treated separately when determining the set-off to which an insurer is entitled?
There is no question that Dixie is obligated to compensate Cannon within the limits of his own $10,000 UM policy with the company. To find otherwise would violate the letter and spirit of our UM statute which was intended to provide prompt recovery for insureds injured by less responsible drivers. However, Miss. Code Ann. § 83-11-107 provides that an insurer who pays a UM claim to its insured has the right of subrogation. As we stated in Harthcock v. State Farm Mutual Auto Insurance Co., 248 So.2d 456 (Miss. 1971),
The protection afforded by the uninsured motorists coverage is not liability insurance. It affords no protection to the uninsured motorist. Its sole utility is to provide the injured party a means of collecting damages for his injuries; and rather than indemnifying the uninsured motorist, as does conventional liability insurance, it provides that the insurer paying the injured party is subrogated to the injured party's rights against the uninsured motorist to the extent that payment is made.

Id. at 459. (emphasis added). When a motorist is underinsured, the insurer may collect from his insurer that which its insured would have been legally entitled to recover. Therefore, once Dixie became obligated to pay and paid Cannon's claim, it had subrogation rights against State Farm in the amount of the claim it paid to Cannon under its UM contract. The subrogation rights are the same when dealing with an underinsured motorist. Because this is an underinsured motorist claim, the liability policy is merely categorized as a personal asset to be divided among the UM carriers. With respect to the State Farm coverage, Cannon, a guest in the vehicle to which the policy applies, is by statutory definition, an "insured." Miss. Code Ann. § 83-11-103(b). Therefore, he is in the same position as if he were the named insured on a first party insurance policy or the beneficiary of a life insurance policy. As with his own UM policy, he can recover directly from State Farm without first going through the lengthy and expensive process of bringing suit to establish the liability of the named insured. Harthcock, 248 So.2d at 460. Dixie, in essence, stepped into the shoes of its insured, Cannon, to recover that which he is legally entitled to receive from the host driver or his insurer. Since UM is a first party contract, the insured has a right to be paid promptly and does not have to first file a liability claim. His insurer likewise, when seeking to subrogate a claim it has paid to its insured, has those same rights. We have consistently held that the humanitarian purposes of the UM statute are best served when viewed from the standpoint of the injured insured. Nester, 459 So.2d at 791-792. See also Preferred Risk Mutual Insurance Co. v. Poole, 411 F. Supp. 429 (N.D.Miss. 1976) (analyzing the UM statute and decisions of this Court). Accordingly, we have struck down clauses in UM policies which contravene sections of the statute by impeding the injured insured's ability to recover from his insurer. Because the insurer as the *925 subrogor steps into the shoes of the insured, we likewise must view any provision impairing the right to subrogate provided by statute from the same perspective. Thus an insurer challenging an impediment to Miss. Code Ann. § 83-11-107 should be afforded the same deference given an injured insured.
Where several insurance companies are involved in settling a claim, the insurer should be able to step into the shoes of its insured and arrive at a settlement with the other carriers involved without subjecting the insured to litigation. The best approach is for each insurer to take a pro rata share of what it has paid out to the insured. However, in the case sub judice, we do not reach this question since the $14,806.34 Cannon received under the two UM policies is less than the $25,000.00 limit of the host driver's liability policy.
Liability insurance exists to protect the named insured when he is at fault. It is comparable to a personal asset available to compensate the injured party. To the extent that the injured insured passenger's own UM coverage aggregated or stacked with the host driver's UM coverage exceeds the named insured's liability policy limits, he is underinsured pursuant to Miss. Code Ann. § 83-11-103(c)(iii). Thus, Cannon's UM policy with Dixie is not "excess" coverage, rather it has been aggregated with the host driver's State Farm policies. Nester, 459 So.2d at 793.
To allow State Farm to offset the $20,193.66 it paid to Cannon under the host driver's liability policy is therefore the equivalent of allowing it to offset any monies paid by Hurst from his own bank account or other personal assets. In Talbot v. State Farm Mutual Automobile Insurance Co., 291 So.2d 699 (Miss. 1974), we rejected State Farm's attempt to limit its liability under UM coverage by the amount paid under medical coverage as diminishing the coverage required by the statute. Id. at 703. Yet, the majority allows State Farm to offset more than it has paid out under Hurst's UM policy limit, leaving Dixie unable to exercise its statutory right to subrogate. Accordingly, the language of the State Farm policy which allows any amount payable for bodily injury or property damage to be reduced by any amount payable or paid to or for the insured for bodily injury under the liability coverage of the policy stands in contravention of § 83-11-107. It allows State Farm to manipulate the statute, deflecting liability to the injured insured's own UM carrier. While State Farm is entitled to some credit for the amount it paid to Cannon, its set-off should be limited only to the $4,806.34 actually paid from its insured's UM policy. To so limit the credit allowed State Farm would do no damage to our holding in Mississippi Farm Bureau Mutual Insurance Co. v. Garrett, 487 So.2d 1320 (Miss. 1986). As distinguished from the case sub judice, Garrett, who was injured when the car in which he was riding was struck by an uninsured vehicle, had entered into a settlement with his host driver's UM carrier for less than the limits of "other similar insurance available" to him. His own UM carrier, Mississippi Farm Bureau, sought to deflect liability for later complications arising from the injuries he had sustained by arguing that he had failed to exhaust other available coverage by entering into a settlement below the $10,000.00 of the host driver's UM policy. The carrier further argued the release Garrett had signed with Dairyland, the other carrier, impeded its subrogation rights. We found no merit to either argument. Consistent with Garrett, limiting the set-off to those funds actually paid out of the UM coverage ensures that the injured insured will be able to collect the damages to which he is entitled without lengthy and costly litigation and without impeding or impairing his insurer's right to subrogate. Accordingly, I dissent.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.
NOTES
[1] Mississippi statutory law on automobile insurance has defined the terms "insured" and "uninsured" as follows:

(b) The term "insured" shall means the named insured and ... a guest in such motor vehicle to which the policy applies... . The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.
(c) The term "uninsured motor vehicle" shall mean:
(i) A motor vehicle as to which there is no bodily injury liability insurance; or
(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage. ...
Miss. Code Ann. § 83-11-103 (Supp. 1980) (emphasis added). The highlighted language causes the term "uninsured" motorist to embrace the "underinsured" motorist, as well. See Wickline v. U.S. Fidelity & Guar. Co., 530 So.2d 708, 712 (Miss. 1988).