IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 25, 2007

Charles R. Fulbruge III
Clerk

No. 06-30970

HERBERT J. ROHR, JR.,

Plaintiff-Appellant,

v.

ALLSTATE INSURANCE CO.

Defendant,

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
(05-CV-2820)

Before JONES, Chief Judge, and DeMOSS and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Herbert J. Rohr, Jr. ("Rohr") appeals the district court's grant of summary judgment to Defendant-Appellant State Farm Mutual Automobile Insurance Co. ("State Farm").[1] We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The other two defendants in the case, Harold Savoie and Allstate Insurance Co., had already been dismissed from the case because they had settled with Rohr for $94,000.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 2004, Rohr was involved in a car accident with Horace Savoie ("Savoie") on LA 48 in Jefferson Parish, Louisiana.  Savoie, driving a 1996 Toyota Corolla, ran a red light and struck Rohr, who was driving a 1987 Dodge Ram.  Savoie, now deceased, did not contest his liability for the accident.

At the time of the accident, Savoie was a resident of Louisiana.  Savoie was insured by Allstate Insurance, holding a Louisiana policy with $100,000 of liability coverage.  The Dodge Ram involved in the accident was not owned by Rohr, and did not have uninsured/underinsured motorist coverage ("UM coverage").  At the time of the accident, Rohr had a personal automobile insurance policy issued by Appellee State Farm Mutual Insurance Co. ("State Farm") with UM coverage of $100,000 per person.

Two years prior to the accident, Rohr had moved from Louisiana to Mississippi.  After Rohr moved to Mississippi, he contacted a Mississippi State Farm agent regarding his Louisiana State Farm car insurance policy.  Rohr contends that the agent told him that his policies would be transferred to Mississippi and that all coverage and protections would remain the same.  On May 20, 2002, his Louisiana State Farm policy was cancelled, and a new Mississippi policy was issued.  The new Mississippi policy was delivered to Rohr in Mississippi.

The Mississippi State Farm policy issued to Rohr provided that State Farm "will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle."  Under the policy, uninsured motor vehicle is defined, in part, as a vehicle which is "not insured or bonded for bodily injury at the time of the accident" or a vehicle which is insured, but "the limits of liability are less than the limits of liability of this coverage under this policy."

Rohr filed suit against Savoie, Allstate Insurance, and State Farm.  Rohr claimed that he incurred over $30,000 in past medical bills and predicted that he would incur $80,000 in costs for future surgery and hospital stays.  Rohr further alleged, that under his UM coverage, State Farm was liable for any bodily injury damages exceeding Allstate's coverage.

State Farm filed for summary judgment, contending that there was no genuine issue of fact that Rohr's policy was issued and delivered to Rohr in Mississippi and that, as a matter of law, State Farm had no UM exposure to Rohr.  The district court held a hearing on the motion on September 5, 2006 and allowed testimony from Rohr.  In an oral ruling from the bench, the district judge granted State Farm's motion for summary judgment.

## II.    DISCUSSION

Rohr points to two sources of error in the district court's decision.  First, he argues that the district court erred in applying Mississippi law to the dispute.  Second, he argues that summary judgment was improper because there are material disputes of fact that require resolution by a jury.  We do not find either of these arguments convincing.

## A.    Choice of Law Determination

First, the District Court correctly determined, under the relevant choice of law principles, that Mississippi law applies.  We review the district court's choice of law determination de novo, and give no deference to the district court's determination of state law.  See, e.g., Cain v. Altec Indus., Inc., No. 06-30619, 2007 U.S. App. LEXIS 14866, at *3 (5th Cir. June 22, 2007).

Federal courts sitting in diversity apply the choice of law principles of the state in which they sit.  Id. (citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 496 (1941)).  Here, therefore, the court must apply Louisiana's choice-of-law principles to determine which state's substantive law applies. Louisiana's Conflicts of Laws provisions "afford the balancing of competing interests between

3

states." Champagne v. Ward, 893 So. 2d 773, 776 (La. 2005). In Champagne v. Ward, the Louisiana Supreme Court announced the appropriate choice-of-law analysis for automobile accident litigation involving parties and insurance policies from other states. 893 So. 2d 773 (La. 2005); see also Abraham v. State Farm Mut. Auto. Ins. Co., 465 F.3d 609 (5th Cir. 2006) (adopting and applying Champagne's choice of law analysis). Champagne instructs the court to first consider the language of the UM laws from each involved state to determine if the relevant provisions differ. Champagne, 893 So. 2d at 786; Abraham, 465 F.3d at 611. Then, if the respective laws are different, the court should conduct a choice-of-law analysis as codified by Louisiana statute. Champagne, 893 So. 2d at 786; Abraham, 465 F.3d at 611.

The Louisiana choice-of-law rules applicable here are found in Louisiana Civil Code Annotated articles 3515 and 3537. Article 3515 states that when a case involves contacts with other states, the applicable law is that "of the state whose policies would be most seriously impaired if its law were not applied to that issue." LA. CIV. CODE ANN. ART. 3515. The factors used to determine the state whose policies would be most impaired are: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state. Id.; see also Champagne, 893 So. 2d at 780-781. Article 3537, intended to be read in conjunction with article 3515, provides "an illustrative list of the factual contacts that are usually pertinent" in determining which state's policies would be most impaired by the failure to apply its law. LA. CIV. CODE ANN. ART. 3537 cmt. c.; see also Abraham, 465 F.3d at 612. Article 3537 requires the court to evaluate the strength of the relevant policies in the light of:

(1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

LA. CIV. CODE ANN. ART. 3537; Abraham, 465 F.3d at 612.

The starting point of Louisiana's choice-of-law analysis requires the court to consider the language of the UM provisions from each state to determine if the provisions do, in fact, differ. Mississippi law defines "uninsured motor vehicle" as "an insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage." Miss. Code § 83-11-103(c). Under this statute, where a tortfeasor and an injured driver carry liability coverage with matching limits, the insured is not entitled to UM coverage. Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co., 614 So. 2d 918, 920 (Miss. 1992). Under Louisiana law, an "uninsured motor vehicle" is defined as an "insured motor vehicle when the automobile liability coverage on such a vehicle is less than the amount of damages suffered by an insured." LA. REV. STAT. § 22:680(2)(B).[2] Thus, in this respect, the applicable Louisiana statute is more generous than the Mississippi statute. The district court correctly found, and the parties appear to agree, that there is a true conflict between the two statutes.

---

[2] This statute also provides that it applies only to UM policies "delivered or issued for delivery" in Louisiana. La. Rev. Stat. § 22:680(2)(b). State Farm argues that this is dispositive, but in Champagne, the Louisiana Supreme Court appeared to consider the state of policy issuance and delivery just one factor in the choice-of-law analysis. Further, State Farm has not pointed this court to any cases indicating that the failure of the policy to be issued and delivered in Louisiana automatically means that Louisiana law doesn't apply.

Because the two states' laws differ, a statutory choice of law analysis is required to determine which state's policies would be most seriously impaired if its laws were not applied to this dispute. The first step in determining which state's law applies under the Louisiana choice-of-law provisions is to identify the policies involved for each state. Champagne, 893 So. 2d at 787. The purpose of Louisiana's UM provision is to promote full recovery for innocent tort victims. Any provisions reducing UM coverage by the amount of liability insurance of the adverse driver is "clearly contrary to the uninsured motorist protection required by Louisiana's statute." Champagne, 893 So. 2d at 788. On the other hand, State Farm points to Mississippi's great interest in the regulation of its insurance industry and its interest in upholding Mississippi contracts. State Farm's argument is bolstered by the fact that Congress has allowed fifty states to have their own uniform system of insurance regulations, indicating that states have a strong interest in applying their insurance laws to policies issued in-state. Zuviceh v. Nationwide Ins. Co., 786 So. 2d 340, 346 (La. Ct. App. 2001). As Champagne recognized, the competing policy interests of Louisiana and Mississippi are "profound." 893 So. 2d at 788.

To determine which state's interests control, we evaluate the state interests in light of each state's relationship to the parties and the dispute. LA. CIV. CODE ANN. ARTS. 3515 & 3537. Rohr points to the following in support of Louisiana's connection to the dispute: the accident occurred in Louisiana; his insurance coverage was originally purchased in Louisiana before being transferred to Mississippi in 2002; and that prior to his move in 2002, Rohr had been a lifetime Louisiana citizen. Pointing out Mississippi's connections to the dispute, State Farm emphasizes that Rohr's insurance policy was issued and delivered in Mississippi; Rohr is a Mississippi citizen and was domiciled in Mississippi at all times relevant to the dispute; and the insured vehicle is registered and garaged in Mississippi.

The district court found that considering the policies of each state, the "overwhelming" contacts the parties have with Mississippi, and the interest that Mississippi has in seeing that its laws are applied to policies executed within Mississippi, Mississippi law should apply to the dispute. We agree. The district court's conclusion is supported by the Louisiana Supreme Court's decision in Champagne, which involved almost the exact same factual circumstances. In Champagne, the plaintiff, a Mississippi resident insured by a Mississippi insurance policy, was involved in a car accident in Louisiana, with a Louisiana resident holding a Louisiana insurance policy. The plaintiff asserted that his claims should be governed by Louisiana's more generous UM provisions, but the court rejected his claim. Applying Louisiana's choice-of-law analysis, the Court held that "Mississippi's policies will be most seriously impaired if its law is not applied." Champagne, 893 So. 2d at 789. Further, the Court reasoned that "[t]he application of Louisiana law to the insurance policy would result in the abrogation of a Mississippi contract," id., and that "plaintiff's premium for UM coverage was based on the application of Mississippi law to the contract." Id. See alsp Woodfield v. Bowman, 193 F.3d 354, 361 (5th Cir. 1999) ("Mississippi has a more substantial interest in the uniform application of its laws governing insurance contracts than Louisiana has in providing an insurance remedy to an out-of-state resident who was injured while transitorily within the border of Louisiana."); Abraham, 465 F.3d at 612 (conducting a choice-of-law analysis in the context of a UM claim and concluded that Mississippi's laws, not Louisiana's, should apply).

Rohr attempts to distinguish these cases, arguing that this case is "based on completely different facts and law than the Champagne case." Rohr argues that because he "transferred" his policy from Lousiana to Mississippi, Louisiana has a closer connection to the case and its policy interests are more significant. Rohr cites no cases in support of this proposition. Moreover, the policy was not

in fact "transferred;" the Louisiana policy was cancelled and a new Mississippi policy was issued. Rohr also argues that State Farm had a duty to notify him of changes in his policy, and that State Farm failed to comply with this duty because it never notified him that his coverage under the Mississippi policy would be different than his coverage under his Louisiana policy. Further, Rohr contends that State Farm affirmatively misrepresented the scope of coverage under his policy, because the State Farm agent told him that his coverage would be the same under his new Mississippi policy. Rohr does not explain why these allegations are at all relevant to the choice of law analysis. The district judge found that even if there was a dispute as to whether he had notice of the Mississippi UM provision, that dispute is immaterial to the choice of law determination. Rohr's arguments are not persuasive; the district court's determination that Mississippi substantive law applies was not in error.

B.    Grant of Summary Judgment

The district court's grant of summary judgment is reviewed de novo. Lancer Ins. Co. v. Shelton, 2007 U.S. App. LEXIS 18785, at *3 (5th Cir. 2007). "Summary judgment is appropriate if the record shows 'that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Id. (quoting FED. R. CIV. P. 56(c)).

Under the plain language of Rohr's Mississippi State Farm policy and Mississippi law, it is clear that, as a matter of law, State Farm has no uninsured motorist exposure to Rohr. Rohr's policy provides that State Farm will pay damages for bodily damage caused by the operation of an uninsured motor vehicle where a vehicle is not insured, or where it is underinsured, but only when "the limits of liability [of the underinsured vehicle] are less than the limits of liability of this coverage under this policy." This language provides for UM coverage only when the tortfeasor's vehicle has no insurance or if the liability coverage of the tortfeasor's vehicle is less than the State Farm UM limits. Here,

Rohr's State Farm policy provided $100,000 in UM coverage. The tortfeasor, Savoie, carried a policy that also had $100,000 in UM coverage. The Mississippi Supreme Court has held that "where a tortfeasor and an injured [driver] carry liability insurance with matching limits, the insured is not entitled to UM coverage under the statute, but is entitled to the liability limits under the tortfeasor's liability policy." Dixie Ins. Co., 614 So. 2d at 920. Under the language of his policy, and Mississippi state law, Rohr is not entitled to any recovery under his UM coverage.

However, Rohr argues that his policy in fact provides for $102,000 in coverage– $100,000 UM coverage plus $2,000 of medical payments coverage. Therefore, Rohr argues, his coverage is $2,000 more than the liability coverage on the adverse vehicle, Savoie falls under the definition of uninsured motorist, and Rohr is entitled to receive $100,000 compensation under the State Farm UM coverage. This argument is without merit. As the district court noted, applicable Mississippi law refers to UM coverage and not to additional medical payment coverage. Further, the plain language of Rohr's policy indicates that he only has $100,000 of relevant coverage. The relevant policy language states: "Under coverage U, uninsured motor vehicle means . . . land motor vehicle, the ownership maintenance or use of which is . . . insured or bonded for bodily injury liability at the time of the accident; but . . . the limits of liability are less than the limits of liability of <u>this coverage under this policy</u>." (emphasis added) The term "this coverage" refers to the amount of coverage U– the uninsured motorist coverage only. Thus, the coverage provided in Rohr's policy matched the coverage provided by Savoie's policy, and Rohr is not entitled to any recovery under his UM policy.

Rohr's second argument is that State Farm violated its duty to notify him of changes in his policy[3] and misrepresented the coverage he would have under the Mississippi policy. Rohr appears to be arguing that, because of these deficiencies, the UM coverage provided by his Mississippi policy should be read to be equal to the coverage he would have been afforded under his previous Louisiana policy. Under that policy, and Louisiana law, Rohr would be entitled to coverage under his UM policy as long as his bodily damages exceeded the UM coverage of the tortfeasor. Rohr's argument is without both legal and factual support. Even evaluating the record in the light most favorable to Rohr, it does not appear that he presented a genuine issue of material fact as to whether he did not receive adequate notice or as to whether State Farm's agent affirmatively misrepresented the scope of the Mississippi policy's UM coverage. See, e.g., Lavespere v. Niagara Mach. & Tool Works, Inc. , 910 F.2d 167, 178 (5th Cir. 1990) (to demonstrate a genuine issue of material fact, the non-moving party must set out specific facts that show a genuine material issue in dispute).

Because there are no genuine disputes of material fact, and State Farm is entitled to judgment as a matter of law, the district court's grant of summary judgment was proper.

III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of summary judgment.

---

[3] In support of this argument, Rohr references a Louisiana statute, La. R.S. 22:63.1. He does not explain why this Louisiana statute applies to him, a Mississippi resident.