649 So.2d 195 (1995)
The Matter of the GUARDIANSHIP OF Steven LACY, a Minor:
Beverly Estep, Guardian
v.
ALLSTATE Insurance Company.
No. 90-CA-01016.
Supreme Court of Mississippi.
January 19, 1995.
*196 Robert J. Bresnahan, Meridian, for appellant.
Kenneth Watts, Grace Watts Mitts, Eppes Watts & Shannon, Meridian, for appellee.
EN BANC.
McRAE, Justice, for the Court:

INTRODUCTION
Steven Lacy, by his mother and guardian Beverly Estep, filed a complaint in the Circuit Court of Lauderdale County claiming benefits under uninsured motorist coverage stemming from a multi-vehicle collision. The negligent driver, William T. Rawls, had coverage which provided liability limits of $500,000.00 per person and $1,000,000.00 per accident with State Farm Mutual Insurance Company. All the occupants in the other vehicles in this collision, including the vehicle occupied by Lacy, had policies with uninsured motorist coverage which provided limits aggregating to $1,900,000.00. Lacy asserted that the uninsured motorist coverage applicable to all insured parties should be aggregated in order that the amount exceeds the liability coverage on the negligent vehicle, thus rendering the driver "uninsured" within the meaning of Miss. Code Ann. § 83-11-103 (Supp. 1987). Such would allow Lacy to recover from Allstate under his underinsured motorist coverage, two policies each in the amount of $25,000.00. Both parties submitted motions for summary judgment. The circuit court granted Allstate's motion for summary judgment, and Lacy raises the following issue on appeal:
I. IS A PASSENGER, WHO IS INJURED IN A MULTIPLE VEHICLE COLLISION AND WHO IS AN INSURED WITHIN HIS OWN UNINSURED MOTORIST COVERAGE, ENTITLED TO AGGREGATE ALL THE UNINSURED MOTORIST COVERAGE, WHICH IS APPLICABLE TO ALL THE OTHER INJURED PERSONS IN THE COLLISION, FOR THE PURPOSE OF DETERMINING THE UNDERINSURED/UNINSURED STATUS OF THE NEGLIGENT DRIVER?
Within this assignment of error, Lacy argues that in employing the liberal intent of Miss. Code Ann. § 83-11-103 (Supp. 1987), we must interpret the statute in the plural rather than the singular, the actual wording of the statute. Although this idea is novel, unfortunately, it appears the Legislature never considered multi-vehicle accidents involving multiple insureds when aggregating under uninsured motorist coverage. This issue is a legislative matter, and, perhaps, it should be reassessed in light of determining what constitutes an insured motorist when involved in a multi-vehicle accident involving multiple parties. Finding that we must construe Miss. Code Ann. § 83-11-103 (Supp. 1987) as written, we affirm the lower court's grant of summary judgment.

STATEMENT OF THE FACTS
Shortly after midnight on December 5, 1987, William T. Rawls was driving his 1986 Ford pick-up truck in a westerly direction in the eastbound lane of Interstate 20 in Rankin County, Mississippi. The Rawls vehicle collided with three vehicles traveling east on Interstate 20, driven by Brad Sims, Terry Barber and Mary Lynn Swift. Fourteen people were injured, and one individual was killed.
At the time of the accident, Rawls' truck was covered by a liability insurance policy with State Farm Mutual Insurance Company. It provided coverage of $500,000.00 per person and $1,000,000.00 per accident. The appellant Steven Lacy and nine other individuals injured in the collision were also covered by uninsured motorist policies. The aggregate amount of this uninsured motorist coverage was $1,900,000.00.
Steven Lacy was covered under his stepfather Chester Estep's Allstate Insurance policy which provided uninsured motorist coverage in the amount of $25,000.00 per accident for two vehicles, or a total of $50,000.00. Lacy stipulated that he was not an insured *197 under any other policy except his stepfather's policy with Allstate.[1]
All injured parties agreed to enter into a contract binding arbitration whereby the issues relating to the nature and extent of the damages were to be evaluated. The arbitrator determined Steven Lacy's damages to be $85,000.00. The total amount of damages for the liability carrier was assessed at $1,298,000.00. Because the total assessed damages exceeded the total amount of Rawls' liability coverage, each of the parties received a pro rata share of the funds available from the $1,000,000.00 State Farm Mutual Insurance Company policy and interest earned by investment over a period of six months in a money market certificate. Steven Lacy received $65,765.96 of his assessed $85,000.00.
Lacy alleged that Allstate was responsible for the $19,234.04 difference between his assessed damages and what he had received from his own uninsured motorist coverage. Further, he asserted that the uninsured motorist coverage applicable to all insured parties involved in the accident should be aggregated and, as such, the aggregated total would exceed the liability coverage on the adverse negligent vehicle, thus rendering the driver "uninsured" within the meaning of Miss. Code Ann. § 83-11-103 (Supp. 1987). Lacy would then be allowed to recover from Allstate under his uninsured motorist coverage policies totalling $50,000.00.

DISCUSSION OF LAW

I. IS A PASSENGER, INJURED IN A MULTIPLE VEHICLE AND INSURED WITHIN HIS OWN UNINSURED MOTORIST COVERAGE, ENTITLED TO AGGREGATE ALL THE UNINSURED MOTORIST COVERAGE, WHICH IS APPLICABLE TO ALL THE OTHER INJURED PERSONS IN THE COLLISION, FOR THE PURPOSE OF DETERMINING THE UNDERINSURED/UNINSURED STATUS OF THE NEGLIGENT DRIVER ACCORDING TO MISS. CODE ANN. § 83-11-103?
This underinsured motorist claim turns on the phrase "limits of bodily injury liability for its insured which are less than limits applicable to the injured uninsured motorist" found in the uninsured motorist statute, Miss. Code Ann. § 83-11-103 (Supp. 1987). This statute provides for "limits," but this Court has never defined that term. When only one individual claimant is involved, the limit would be that of the particular liability policy. However, when multiple claimants are presented in a scenario such as the case at hand, the determination of the limits of bodily injury liability is much more complex. We consider this proposition under the accepted principles of Miss. Code Ann. § 83-11-103 and the policies issued in accordance with the statute, which are (1) to liberally construe the statute in favor of the insured and (2) to strictly avoid or preclude exceptions or exemptions from coverage. Matthews v. State Farm Mutual Automobile Ins. Co., 471 So.2d 1223, 1225 (Miss. 1985).
Insurers may not use policy language to diminish coverage mandated by statute; however, they may enhance coverage. Originally, when the pertinent statute was enacted, uninsured or underinsured coverage was to have been a simple contract between the insured and insurance company to provide a source for collection by the insured of all sums which he shall be legally entitled to recover from the owner or uninsured vehicle. Unfortunately, the statute did not take into account multiple parties, vehicles or even comparative negligence, whereby one party may be partially liable under the liability portion, as well as under an uninsured or underinsured motorist (hereinafter "UM") policy.
Instead of tying the UM coverage available to an insured to the damages he incurs after compensation or lack of compensation from the liability carrier, the Legislature promulgated Miss. Code Ann. § 83-11-101 to provide that limits of liability are the same as UM coverage. Thus, the insured is precluded from recovering from his UM insurer if the amounts are the same. We have, however, interpreted limits of liability in two previous *198 cases to mean what ever the liability carrier pays. If it is less than the UM coverage, then the insured may invoke his UM coverage over and above the liability coverage even though the insured did not collect all of the liability coverage.
In Mississippi Farm Bureau Mutual Insurance Co. v. Garrett, 487 So.2d 1320 (Miss. 1986), the insured, an occupant in a vehicle that had liability and UM coverage, effectuated a settlement of $7,517.00 under the UM coverage and $1,000.00 under the liability coverage. Garrett, the insured, however, had three personal UM policies totaling $30,000.00 with Farm Bureau. Farm Bureau claimed he was precluded from invoking his UM coverage since he did not exhaust the liability coverage and since he signed a release, thus voiding the subrogation rights of Farm Bureau. The Garrett court, speaking through Justice Robertson, held that Farm Bureau's position bore little relationship to the real world since its position did not consider litigation costs, attorney fees, legal expenses, let alone the risk of not getting any amount or less than what was offered by the liability carrier at a later date when there were multiple claimants.
In Harthcock v. State Farm Mutual Automobile Insurance Co., 248 So.2d 456 (Miss. 1971), the insured passenger on a motorcycle settled with the liability carrier of the motorcycle, Universal Underwriter, for $4,500.00, not the full coverage of $5,000.00. State Farm also afforded UM coverage of $5,000.00. Harthcock brought suit against Universal claiming it also had a $5,000.00 UM policy. The Harthcock court rejected the preclusion argument and stated that the insured party could collect under both UM policies for all damages sustained over and above the amount received ($4,500.00) in the prior settlement, subject to the limits of the uninsured motorist coverage. Judgment was rendered against each company for $5,000.00 respectively. Harthcock v. State Farm Mutual Insurance Co., 248 So.2d 456, 462 (Miss. 1971).
Although these two cases are not directly on point, they do lend light to the principle that the term "limits" refers to what an insured may or may not receive from the liability carrier, particularly when it involves multiple claims, and if it is less than his UM coverage, he may then aggregate. Unfortunately, this is of little benefit to the appellant in the case at hand since he received $65,765.86 from the liability carrier and only had $50,000.00 in UM coverage. If there had been coverage over the $65,765.86 amount, then he would have availed himself to the UM coverage up to the amount of either his damages or policy limits, whichever was less.
To address the issue as presented by the appellant, we must first determine what coverages are afforded to him. In order to recover the UM benefits provided by an insurance policy, the claimant must first prove that he is an "insured" under either the insurance policy and/or the UM statute. Gillespie v. Southern Farm Bureau Casualty Insurance Co., 343 So.2d 467, 471 (Miss. 1977).
Mississippi Code Ann. § 83-11-103(b) provides that, as used within the UM statute:
The term "insured" shall mean the named insured and, while resident of the same household, the spouse of any such named insured and relatives of either, while in a motor vehicle or otherwise, and any person who uses, with the consent expressed or implied, of the named insured, the motor vehicle to which the policy applies, or the guest in such motor vehicle to which the policy applies, or the personal representative of any of the above. The definition of the term "insured" given in this section shall apply only to the uninsured motorist portion of the policy.
Under this definition, Steven Lacy does not qualify as an insured under the policies of the other persons injured in the accident.
Lacy asserts that Wickline v. USF & G, 530 So.2d 708 (Miss. 1988) is controlling since the total UM coverage covering all parties injured in this accident exceeds the total amount of Rawls' liability coverage of $1,000,000.00. Thus, the Rawls vehicle qualified as an "underinsured/uninsured" vehicle for purposes of Miss. Code Ann. § 83-11-103(c)(iii) (Supp. 1987). Lacy, therefore, argues that the uninsured motorist provision of his stepfather's Allstate policy should pay a *199 portion of the damages he sustained in the collision. Miss. Code Ann. § 83-11-103(c) defines an uninsured vehicle as follows:
(c) The term "uninsured motor vehicle" shall mean:
* * * * * *
(iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage. (emphasis added.)
Cases addressed by this Court involving UM coverage have arisen from one- or two- car accidents. We have never considered the question of the effect of the above-quoted language in a case where there is more than one "injured person," as in a multiple-vehicle collision. The statute is obviously written in the singular. If a plural reading were given to the statute, which is what Lacy requests, the statute would read as follows:
The term "uninsured motor vehicle" shall mean an insured motor vehicle when the liability of such vehicle had provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person[s] provided under [their] uninsured motorist coverage.
Did the Legislature intend for all "injured persons" in an accident to aggregate their uninsured motorist coverage in order to qualify the adverse vehicle as an uninsured vehicle so they might collect from their own insurance companies under their uninsured motorist policies? Or, was the language only to apply to each person's individual policy limits, regardless of how many people were injured in the accident, so that each individual's policy limits would have to exceed that of the adverse vehicle in order for them to qualify to recover on their uninsured motorist coverage? Therein lies the dispute.
In Wickline, we held that aggregation of an injured person's uninsured motorist limits is allowed for the purpose of qualifying the tortfeasor as an uninsured motorist. If the injured person is insured under more than one policy of uninsured motorist insurance, the limits of each of the policies "applicable to him" are to be considered in the aggregate to determine whether the tort ... for's vehicle is an uninsured motor vehicle. Thus, where the bodily injury liability limits for an automobile in which the injured person was riding at the time of the accident were less than the limits "applicable to her" under the combined coverage of two of her own uninsured motorist policies, then the vehicle in which she [Wickline] was riding was qualified as an uninsured vehicle, allowing her to recover from her own insurance company on her uninsured motorist coverage. Id., at 714-715.
Lacy asserts that this Court's holding in Wickline, if read in the plural rather than the singular, would require the aggregation of all the uninsured motorist policies of all of the people injured in the accident. By reading the statute to cover those situations where there is more than one injured party, Lacy suggests that one can easily conclude that in order to make a determination as to whether the negligent party is underinsured, one must stack the uninsured motorist coverage of all of the persons injured. Lacy quotes extensively from this Court's admonishment in Wickline that the Uninsured Motorist Act must be construed liberally to achieve this purpose; that is, to provide innocent injured motorists with a means of compensation for injuries received at the hands of an uninsured/underinsured motorist. Wickline, 530 So.2d at 711, citing Harthcock v. State Farm Mutual Insurance Co., 248 So.2d 456, 460-61 (Miss. 1971); Stevens v. USF & G, 345 So.2d 1041 (Miss. 1977); Parker v. Cotton Belt Insurance Co., 314 So.2d 342 (Miss. 1975); Lowery v. State Farm Mutual Automobile Insurance Co., 285 So.2d 767 (Miss. 1973); Hodges v. Canal Insurance Co., 223 So.2d 630 (Miss. 1969); GEICO v. Brown, 446 So.2d 1002 (Miss. 1984); Pearthree v. Hartford Accident & Indemnity Co., 373 So.2d 267 (Miss. 1979).
Lacy asserts that, as with in other aggregation cases, the policies in this case should be aggregated because multiple premiums have been paid and multiple coverage should be available. In other words, because these individuals who have uninsured motorist coverage *200 had paid the premiums, they ought to be able to rely upon the coverage.
Lacy emphasizes that, in keeping with the holdings in these cases, the phrase "injured persons" in § 83-11-103(c)(iii) should be interpreted in multiple-vehicle collisions to refer to all of the injured people in all of the various cars, and, thus, under Wickline, we should allow the aggregation of several individuals' policy amounts to determine if the tortfeasor is, under the statute, an uninsured motorist. The general rule of statutory construction relating to the use of plural and singular words is as follows:
Where such construction is necessary to give effect to the legislative intent, words in the plural number will be construed to include the singular, and words importing the singular only will be applied to the plural of persons and things. Such rule, however, is to be applied only when necessary to carry out the obvious intent of the legislature. The article "a" is generally not used in a statute in a singular sense unless such an intention is clear from the language of the statute.
82 C.J.S. § 337 Statutes (1955).
Are we to believe that the Legislature intended for an injured party to aggregate not only all of the policies under which he qualifies as an "insured," but also under the policy of any other person injured in the same accident for the purposes of qualifying the tortfeasor's vehicle as underinsured?
Lacy's proposed interpretation would not be faithful to our case law or to the legislative intent of the Uninsured Motorist Act. The common denominator in our aggregation cases is that the person as to whom aggregation is allowed must be an "insured" under the policies being aggregated. For example, in Harris v. Magee, 573 So.2d 646 (Miss. 1990), we stated:
In the current case, Larry was "using" a covered vehicle(s) with consent at the time of the accident and was, therefore, a Class II insured. This Court's interpretation of statutory uninsured motorist coverage has always been shaped by the template of public policy upon which this statute is based  to provide protection to innocent motorists injured by financially irresponsible drivers up to the extent of their injuries. Stevens, 345 So.2d at 1043. To this end, this Court has consistently recognized and allowed the stacking of uninsured motorists coverage by Class II insureds. See Cossitt v. Nationwide Mutual Ins. Co., 551 So.2d 879 (Miss. 1989) (Class II insured/church employee was allowed to stack three policies issued to the church on the bus involved in the accident and two other buses owned by the church); Wickline v. USF & G, 530 So.2d 708 (Miss. 1988) (allowed a Class II insured to stack the four vehicles insured under a single personal policy issued to the owner of the vehicle which she was driving with permission at the time of the accident). See also Curry v. Travelers Indemnity Co., 728 F. Supp. 1299 (S.D.Miss. 1989) (injured taxi driver, a Class II insured, was allowed to stack uninsured motorist benefits pursuant to his employer's single business policy).
Id. at 654. See also Dixie Insurance Co. v. State Farm Mutual Automobile Insurance Co., 614 So.2d 918 (Miss. 1992) (where tortfeasor and injured guest passenger carry liability insurance with matching limits, insured passenger is not entitled to uninsured motorist coverage, but is restricted to tortfeasor's liability limits); State Farm Mutual Automobile Insurance Co. v. Davis, 613 So.2d 1179 (Miss. 1992) (guest passenger in driver's parents' pickup truck was "insured" within meaning of uninsured motorist statute only under policy covering pickup truck, not under policies covering other vehicles owned by driver's parents).
The focus of this issue is who is an "insured" under any given policy. This Court stated in Wickline:
It is now clear that the question is purely and simply one of reading the statutes as written. First, who is an "insured"? There is no natural law definition of insured in the uninsured motorist law nor are we concerned with what the law ought to be. The judicial eye reads only the positive command of the statute. In relevant part § 83-11-103(b) defines "insured" as "a guest in such motor vehicle to which *201 the policy applies, or the personal representative of [such guest]."
* * * * * *
In the end this Court reverses and renders as to this issue on the direct appeal, and does so because operative provisions of the Mississippi Uninsured Motorists Act have been declared as a matter of positive law to provide that all classes of statutory insureds may recover of the uninsured motorist insurer all amounts he or she may be entitled to recover as damage from the uninsured motorist, limited only by the limits of uninsured motorist coverage multiplied by the number of vehicles insured in the policy. This court cannot on principle distinguish today's case from Brown, Pearthree, and [Hartford Accident & Indemnity Co. v.] Bridges [350 So.2d 1379 (Miss. 1977)], which we regard as settling the law in this area.
Wickline, 530 So.2d at 714-715.
This Court has not allowed aggregation of uninsured motorist policies where the claimant is not an insured within the coverage he seeks to aggregate, whether as an additional insured, permissive user, or a guest passenger. In each case where we have found aggregation to be applicable, the claiming party necessarily has been an "insured" as defined by the statute on policy.
Lacy perceives this as an issue of construing the statute in the plural rather than in the singular. Thus, if we read the statute in the plural, we would have to hold that an individual no longer needs to be an insured under a policy in order to benefit from aggregation. We, on the other hand, hold that reading the statute in the plural to allow aggregation of all policies covering all persons injured in the accident would fly in the face of our prior decisions which permit aggregation only of those policies under which the claimant is an insured. Finding that we must construe Miss. Code Ann. § 83-11-103 (Supp. 1987), as written, we, accordingly, affirm the lower court's grant of summary judgment.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
PITTMAN, J., concurs in results only.
NOTES
[1] From the police report there appeared to be a policy covering the vehicle that Lacy occupied; however, it is not before us and we do not consider it for this appeal.