# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01020-SCT

*JOSEPH WISE, CHARLENE C. WISE AND ELIZABETH RAMSEY WISE, MINOR, BY AND THROUGH HER MOTHER AND NEXT FRIEND, CHARLENE C. WISE*

*v.*

*UNITED SERVICES AUTOMOBILE ASSOCIATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2002 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JENNIFER INGRAM WILKINSON |
| | CARROLL H. INGRAM |
| | MARCUS ALFRED TREADWAY |
| | THOMAS G. LILLY |
| ATTORNEY FOR APPELLEE: | JOSEPH W. McDOWELL |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 10/09/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     United Services Automobile Association (USAA) was granted summary judgment pursuant to Miss. Code Ann. § 83-11-103(c) (Rev. 1999) after the circuit court determined there was no uninsured/underinsured coverage available. Joseph Wise, his wife, Charlene C. Wise, and their daughter, Elizabeth Ramsey Wise, (collectively the "Wises") appeal the ruling of the circuit court. Finding USAA's

motion for summary judgment was properly granted, we affirm the judgment of the Circuit Court of the First Judicial District of Hinds County.

## FACTS AND PROCEEDINGS IN THE CIRCUIT COURT

¶2.     On October 11, 1996, Joseph Wise, his wife, Charlene, and their daughter, Elizabeth, were pedestrians crossing Greymont Avenue in Jackson after leaving the State Fair. Joseph and Charlene were struck by a pickup truck driven by Alfred Larry Aswell and owned by Steven Bostic. Joseph and Charlene both allege to have suffered severe physical and emotional injuries. Elizabeth, who was not struck, witnessed the collision. Before the collision, Aswell and Bostic had been patrons at the bar in the former Ramada Inn Coliseum. After allowing Bostic to pay his bar tab of nineteen beers, Aswell left in Bostic's truck which he had been driving for several months.

¶3.     At the time of the accident, Joseph Wise had an insurance policy issued by USAA insuring three separate vehicles with uninsured motorist bodily injury limits of $100,000 per person and $200,000 per accident. The parties agree there is "stacked" uninsured/underinsured motorist coverage applicable to each injured party in the amounts of $300,000 per person and $600,000 per accident. Aswell was insured under Bostic's policy with USF&G, which provided a single liability limit of $300,000.

¶4.     The Wises filed suit against Aswell, Bostic, Steel Service Corporation (Aswell's employer), Peoples Security Life Insurance Company, Inc. (owner of the Ramada Coliseum bar), JMH Operating Company, Inc. and American General Hospitality, Inc. (operators of the bar). The Wises settled their claims against Bostic for the full amount of his $300,000 single per accident limit USF&G policy covering his vehicle. After the settlement, the Wises reduced the original demand made upon USAA for the stacked UM/UIM per accident limit of $600,000, since more than one person suffered injuries, to $300,000. The Wises also settled their claims against Steel Service for $4,000, even though both Aswell and Steel Service contended

2

Aswell was not acting in the course and scope of his business. After the Wises settled their claims against the bar defendants, the amount of which has not been disclosed due to a confidentiality agreement, they informed USAA that the amount of the settlement exceeded USAA's UM coverage of $600,000. However, because they had not been fully compensated for their injuries, the Wises continued to seek $300,000 in uninsured motorist benefits from USAA. Aswell, who had no insurance coverage in his name, still remains a defendant in the case.

¶5.     USAA was joined as a defendant after the Wises filed their third amended complaint on June 25, 1999.  On December 19, 2001, USAA filed a motion for summary judgment, arguing that if the Wises received a settlement amount in excess of USAA's $600,000 per accident limit, then nothing was due or owing from USAA. USAA claimed the non-duplication provision under the policy's UM coverage would provide USAA with a limits offset regardless of whether the Wises had been fully compensated for their injuries. On April 12, 2002, the trial court granted the motion for summary judgment in favor of USAA, holding there was no UM/UIM coverage claim available to the Wises. Pursuant to Miss. R. Civ. P. 54(b), the trial court entered an order on May 16, 2002, certifying its previous order of summary judgment as a final judgment. On June 14, 2002, the Wises timely appealed to this Court.

## DISCUSSION

¶6.     This Court employs a de novo standard in reviewing a lower court's grant of summary judgment. *Short v. Columbus Rubber & Gasket Co.*, 535 So.2d 61, 65 (Miss. 1988). Summary judgment may only be granted where there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R.C.P. 56(c). The trial court must carefully review all evidentiary matters in the light most favorable to the non-moving party. *Brown v. Credit Ctr., Inc.,* 444 So. 2d 358, 362

3

(Miss. 1983). If in this view, the moving party is entitled to judgment as a matter of law, summary judgment should be granted. ***Id.***

> I. **WHETHER THE PER PERSON LIMIT OR THE PER ACCIDENT LIMIT APPLIES IN DETERMINING IF THERE IS AN UNINSURED/UNDERINSURED MOTOR VEHICLE, WHERE THE ACCIDENT INVOLVES MULTIPLE CLAIMS UNDER ONE UM POLICY.**

¶7.     The Wises argue the trial court improperly adopted USAA's argument that the tortfeasor vehicle was not underinsured by comparing the liability limit of the tortfeasor's policy with the *per person* limit of the injured insureds' UM coverage, and thus committed reversible error. The Wises contend that the proper course of action would have been for the trial court to have used the *per accident* limit of the injured insureds' UM coverage because there were two or more injured insureds. The Wises do admit that the trial judge did not expressly state in his order granting summary judgment in favor of USAA that the tortfeasor vehicle was not underinsured; however, the Wises state it is obvious that the trial court came to this conclusion by comparing the $300,000 single liability limit of Bostic's USF&G policy to the $300,000 per person limit of USAA's policy. The Wises also contend this was the position advanced by USAA in its brief in support of its motion for summary judgment.

¶8.     USAA argues this Court must compare each of the injured insured's available UM/UIM limits to the $300,000 limits available under the tortfeasor's automobile policy. Because each injured insured has potentially $300,000 in per person limits available under the USAA policy compared to the $300,000 limits available under the tortfeasor's automobile policy, no injured insured has a UM/UIM claim because there is no uninsured motor vehicle as defined by law. USAA argues the Wises confuse this issue by comparing the stacked UM limits to the amount "actually available to the insured" by considering the per accident limits. USAA claims this argument has been rejected numerous times by this Court.

4

¶9. In granting summary judgment in favor of USAA, the trial judge stated:

> Based upon the definition of "uninsured motor vehicle" in § 83-11-101(c)(iii) Miss. Code Ann. (1999), the "limits versus limits" standard required by the statute and undisputed facts in this case, and applicable law, there is no uninsured/under insured coverage claim available to the Plaintiffs. See *Wickline v. United States Fidelity & Guaranty Co.*, 530 So. 2d 708 (Miss. 1988), *Cossitt v. Federated Guar. Mut. Ins. Co.*, 541 So. 2d 436, 440 (Miss. 1989), *Dixie Insurance Company v. State Farm Mutual Insurance Co.*, 614 So. 2d 918 (Miss. 1992), *Guardianship of Lacy v. Allstate Insurance Co.*, 649 So. 2d 195 (Miss. 1995), and *Fidelity and Guaranty Underwriters, Inc. v. Earnest*, 699 So. 2d 585 (Miss. 1997).

Because there were no genuine issues of material fact, the trial court found USAA was entitled to judgment as a matter of law. The trial court also found that in light of its ruling, USAA had an arguable reason to deny coverage to the Wises; therefore, the Wises had no valid bad faith claim against USAA.

¶10. It is undisputed that the Wises had UM coverage limits of $300,000 per person and $600,000 per accident. It is also undisputed that Bostic's vehicle was covered by a USF&G single limit liability policy of $300,000. The question this Court must answer is in determining whether a vehicle is an uninsured vehicle pursuant to statute, which amount is used when multiple claimants are involved-the per person or the per accident limit?

¶11. It has been well established by this Court that before the UM/UIM provisions of a policy can be invoked, it must first be determined if the tortfeasor vehicle is an "uninsured motor vehicle." The definition of "uninsured motor vehicle" is set out in Miss. Code Ann. § 83-11-103 (Rev. 1999):

> (c) The term "uninsured motor vehicle" shall mean:
>
>> (iii) An insured motor vehicle, when the liability insurer of such vehicle has provided limits of bodily injury liability for its insured which are less than the limits applicable to the injured person provided under his uninsured motorist coverage. . . .

In *Wickline v. U.S. Fidelity & Guar. Co.*, 530 So.2d 708, 713 (Miss. 1988), this Court held:

5

The Mississippi statutory definition of uninsured motor vehicle, as amended to incorporate the underinsured concept, compares the limits of the tortfeasor's liability coverage to "the limits *applicable to the injured person* provided under his uninsured motorist coverage." Miss. Code Ann. § 83-11- 103(c)(iii) (Supp.1972) [emphasis added]. Whether the UM coverage of various policies and vehicles is "applicable to the injured person" must be determined in accordance with established Mississippi uninsured motorist law.

Again, this Court must determine what amounts are "applicable to the injured person."

¶12.    In *Wickline*, Stacy Wickline was killed when the car in which she was a passenger collided with another vehicle parked on the side of the road. *Id.* at 710. Immediately after this accident Stacy's survivors received $10,000 from USF&G, the insurance carrier for the owner of the car in which Stacy was a passenger, as the limits of its liability per person coverage. *Id.* However, the survivors filed suit alleging each beneficiary was entitled to the "maximum per person uninsured motorist coverages on the four [] vehicles under the USF&G policy, totaling $80,000." *Id.* The trial court denied this stacking and further held that the survivors were "'insureds' under the uninsured motorist provision of the USF&G policy applicable to the [car in which Stacy was a passenger] and that under the terms of the policy, each was entitled to $10,000, a total of $20,000, which USF&G could not reduce by the $10,000 coverage paid under the liability provision of the same policy." *Id.* at 711.

¶13.    This Court first had to determine whether the vehicle was an uninsured/underinsured motor vehicle.

For the uninsured underinsured motorist provisions of the U.S.F. & G. policy [to] come into play, the [vehicle] must be an "uninsured motor vehicle" as defined in the statute. The answer to this question is determined by comparing the amount of uninsured motorist coverage available to the amount of liability insurance available.

*Id.* at 712. This Court stated that pursuant to the Mississippi UM statute as amended "stacking of the injured person's limits is allowed for the purpose of qualifying the tortfeasor as an uninsured motorist." *Id.* at 713.

6

> If an injured person is insured under more than one policy of uninsured motorist insurance, the limits of each such policy are "applicable" to him. *Harthcock v. State Farm Mutual Automobile Insurance Company*, 248 So.2d 456 (Miss.1971). If he is injured while riding as a passenger, the uninsured motorist coverage of the vehicle in which he is riding, in addition to that of his own vehicles, is "applicable to the injured person". *Southern Farm Bureau Casualty Insurance Company v. Roberts*, 323 So.2d 536 (Miss.1975).

*Id.* Therefore, this Court held the two State Farm policies under which the survivors were insured were applicable in addition to the USF&G policy of the tortfeasor vehicle. *Id.* Because the bodily injury liability limits for the tortfeasor vehicle were less than the limits applicable to the injured person provided under the uninsured motorist coverage, the tortfeasor vehicle was thus an uninsured motor vehicle as defined by statute. *Id.*

¶14.    This Court also held because stacking was so imbedded in Mississippi's uninsured motorist law, the survivors would be allowed to stack the uninsured motorist coverage of each of the four vehicles covered under the USF&G policy. *Id.* at 714-15. The final issue this Court addressed was whether USF&G was entitled to an offset of the liability payments already made. *Id.* at 716. This Court, relying upon a then recent ruling in *State Farm Mut. Auto. Ins. Co. v. Kuehling*, 475 So. 2d 1159 (Miss. 1985), which allowed for an offset for uninsured motorist coverage from the tortfeasor's liability carrier based upon the specific policy and the UM statute, held that USF&G was entitled to offset its uninsured motorist coverage by the payment of the tortfeasor's liability carrier. *Wickline*, 530 So. 2d at 717.

¶15.    In *Cossitt v. Federated Guar. Mut. Ins. Co.*, 541 So. 2d 436, 438 (Miss. 1989), Jan Cossitt along with Odom McDaniel and Joseph White were injured in an automobile accident when their vehicle was struck by Lester Davis. McDaniel subsequently died of his injuries. *Id.* Suit was filed by McDaniel's estate and White against Davis. *Id.* The suits were settled after Davis's liability insurance carrier paid

7

$10,000 to each party. *Id.* These payments totally exhausted the available liability coverage under Davis's insurance policy. *Id.* However, Cossitt received nothing from the insurance carrier because she did not file suit. *Id.* Cossitt claimed that because there were no longer any proceeds with which to pay her claims under Davis's liability policy, he was now an uninsured motorist as to her so that her own insurance carrier, Federated Guaranty, was obligated to her under her policy which provided for uninsured motorist coverage. *Id.*

¶16. At the time of the accident, the tortfeasor had in effect bodily injury liability coverage in the amount of $10,000 per individual and $20,000 per accident. *Id.* at 439. Cossitt had in effect uninsured motorist coverage for bodily injury in the amount of $10,000 per individual and $20,000 per accident. *Id.*

> Instantly, it can be seen that the focus in determining whether the tortfeasor is uninsured is on the respective "limits" of the policies." Mississippi law defines an [un]insured vehicle in terms of policy limits, as distinguished from proceeds actually received by a particular claimant," and furthermore, "the amount of the claimant's damages is also irrelevant when determining eligibility for uninsured motorists benefits." *Wilson v. Nationwide Mutual Ins. Co.*, 667 F.Supp. 349, 355 (N.D.Miss. 1987); *Herrod v. National Indemnity Co.*, 643 F.Supp. 956, 959 (N.D.Miss. 1986); *Wickline v. U.S. Fidelity & Guaranty Co.*, 530 So.2d 708, 712-13 (Miss. 1988).

541 So. 2d at 440. This Court held because the limit of liability provided by Davis's insurer was not less than the limit provided by Cossitt's uninsured motorist coverage, the tortfeasor was not an uninsured motorist pursuant to statute. *Id.* This Court also stated:

> At first blush, it might appear that the policy of the Uninsured Motorist Act is to assure each injured party the availability of at least the minimum amount provided by the Mississippi Motor Vehicle Safety Responsibility Law. However, a closer inspection proves such a policy unintended, and inconsistent with the uninsured motorist provisions of the Motor Vehicle Safety Responsibility Law.
>
>> The applicable section of the Motor Vehicle Safety Responsibility Law referred to in Section 83-11-101 provides as follows:
>> (2) Such owner's policy of liability insurance:

(b) shall pay on behalf of the insured named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, *subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: ten thousand dollars ($10,000.00) because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person, twenty thousand ($20,000.00) because of bodily injury to or death of two (2) or more persons in any one (1) accident,* and five thousand dollars ($5,000.00) because of injury to or destruction of property of others in any one (1) accident.

(Emphasis added). Mississippi Code Annotated, Section 63-15-43(2)(b) (Supp. 1988); *see also* Sections 63-15-3(j), 63-15-11(4), 63-15-31. Thus, this statute sets the minimum amount of uninsured motorist coverage which every automobile liability policy must include, unless rejected by the insured.

*Cossitt*, 541 So. 2d at 441. This Court also found guidance from the Alabama Supreme Court, which addressed the identical argument based on an analogous statute:

The statute mandates a minimum of $10,000 coverage *only* in the case of accidents resulting in bodily injury to or the death of one person. Where an accident results in bodily injury to or the death of two or more persons, the statute mandates a minimum coverage of $20,000 for the accident. The statute clearly contemplates situations in which the recovery of each individual might be less than $10,000. *It appears, therefore, that the policy behind the statute is to assure the availability of minimum coverage for each accident, not for each injured person.* The minimum which the legislature intended to make available was available in the present case under [Davis'] liability policy. For this reason we cannot hold that he was an "uninsured motorist." (Emphasis added).

*Id.* (quoting *Criterion Ins. Co. v. Anderson*, 347 So.2d 384, 386 (Ala. 1977)).

¶17.    In *Dixie Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 614 So.2d 918 (Miss. 1992), Glen Hurst and Donald Cannon were riding in a car when Hurst negligently drove off the highway, thus injuring Cannon. Hurst's insurer, State Farm, provided liability coverage of $25,000 per person and $50,000 per accident, and UM coverage in the amount of $25,000 per person and $50,000 per accident. *Id.* at 919.

9

Cannon's insurer, Dixie, provided UM coverage in the amount of $10,000. *Id.* State Farm settled with Cannon for $20,193.66. *Id.* This payment, in addition to the settlements of the other passengers, exhausted State Farm's per accident limit. *Id.* After the settlement, Cannon filed suit against State Farm and Dixie demanding additional payment because he had not been fully compensated for his injuries. *Id.* The trial judge ordered that State Farm was liable to Cannon under its UM coverage provision and ordered State Farm to pay Cannon $25,000 minus the liability payment, leaving State Farm with a balance of $4,806.34. *Id.* The trial judge also found that Dixie was liable to Cannon under its UM coverage provision and ordered Dixie to pay Cannon $10,000. *Id.* at 920. This Court affirmed the judgment of the trial judge and held:

> Pursuant to the holding of *State Farm Mutual Auto. Ins. Co. v. Kuehling*, 475 So.2d 1159, 1163 (Miss.1985), a policy may, by its language, "provide [ ] for offsets of the [UM] coverage by amounts paid by the tortfeasor's carrier...." Applying that rule to this case, one could say that, to the extent of $20,193.66, State Farm provided liability insurance of $25,000 and cannot be considered wholly uninsured. Subtracting or offsetting, $20,193.66 from $25,000, the court correctly arrived at an uninsured liability due from State Farm of $4,806.34.

614 So. 2d at 922.

¶18.    In *Guardianship of Lacy v. Allstate Ins. Co.*, 649 So.2d 195 (Miss. 1995), William Rawls's vehicle collided with three other vehicles, injuring fourteen people and killing one. Rawls's truck, which was insured by State Farm, had coverage of $500,000 per person and $1,000,000 per accident. *Id.* at 196. The aggregate amount of the uninsured motorist coverage was $1,000,000. *Id.* Steven Lacy was covered under his stepfather's Allstate Insurance policy which provided uninsured motorist coverage in the amount of $50,000 (this included two vehicles). *Id.* After all parties agreed to enter into binding arbitration, Lacy's damages were determined to be $85,000. *Id.* at 197. Because the total amount of damages exceeded Rawls's liability coverage, each party received a pro rata share of the available funds. *Id.* Lacy received

10

$65,765.96. *Id.* Lacy argued his carrier, Allstate, was responsible for the difference between his assessed damages and what he had received from his own uninsured motorist coverage. *Id.* He also asserted that the uninsured motorist coverage of all the insured parties involved in the accident should be aggregated, so that the aggregated amount would exceed the liability coverage on the tortfeasor vehicle. *Id.*

¶19.     This Court first had to determine whether Lacy was an "insured" under either the insurance policy and/or the UM statute. *See Gillespie v. Southern Farm Bureau Cas. Ins. Co.*, 343 So.2d 467, 471 (Miss. 1977).

> This underinsured motorist claim turns on the phrase "*limits* of bodily injury liability for its insured which are less than limits applicable to the injured uninsured motorist" found in the uninsured motorist statute, Miss. Code Ann. § 83-11-103 (Supp.1987). This statute provides for "limits," but this Court has never defined that term. When only one individual claimant is involved, the limit would be that of the particular liability policy. However, when multiple claimants are presented in a scenario such as the case at hand, the determination of the limits of bodily injury liability is much more complex. We consider this proposition under the accepted principles of Miss. Code Ann. § 83-11-103 and the policies issued in accordance with the statute, which are (1) to liberally construe the statute in favor of the insured and (2) to strictly avoid or preclude exceptions or exemptions from coverage. *Matthews v. State Farm Mutual Automobile Ins. Co.*, 471 So.2d 1223, 1225 (Miss. 1985).

*Lacy*, 649 So. 2d at 197. Because this Court held the Legislature did not intend all injured persons in an accident to aggregate their uninsured motorist coverage in order to qualify the tortfeasor vehicle as an uninsured motor vehicle, this Court found that Lacy was not an "insured" under the policies of the other injured parties. *Id.* at 199-01. This Court held:

> This Court has not allowed aggregation of uninsured motorist policies where the claimant is not an insured within the coverage he seeks to aggregate, whether as an additional insured, permissive user, or a guest passenger. In each case where we have found aggregation to be applicable, the claiming party necessarily has been an "insured" as defined by the statute on policy.

*Id.* at 201. This Court also stated that:

the term "limits" refers to what an insured may or may not receive from the liability carrier, particularly when it involves multiple claims, and if it is less than his UM coverage, he may then aggregate. Unfortunately, this is of little benefit to the appellant in the case at hand since he received $65,765.86 from the liability carrier and only had $50,000.00 in UM coverage. If there had been coverage over the $65,765.86 amount, then he would have availed himself to the UM coverage up to the amount of either his damages or policy limits, whichever was less.

*Id.* at 198.

¶20.    In *Fidelity & Guar. Underwriters, Inc. v. Earnest*, 699 So.2d 585 (Miss. 1997), three passengers, including Tracy Earnest were killed in a single-car accident involving a vehicle negligently driven by Charles Plunkett. Plunkett's insurance policy, issued by F&G, provided for $50,000 single limits liability coverage and $25,000 uninsured motorist coverage. *Id.* at 586. Tracy was covered under her father's insurance policy, issued by State Farm, which provided for $45,000 in uninsured motorist benefits through stacking. *Id.* Pursuant to statute, Plunkett was an uninsured motorist. F&G offered to pay each passenger one-third of the $50,000 in liability coverage, but it denied any liability for UM benefits. *Id.* State Farm paid $20,000 in UM benefits. *Id.* The trial court held that State Farm's tender of $20,000 relieved it of any additional liability. *Id.* The trial court also found F&G was liable for $8,333.33 in UM benefits ($25,000-16,666.67). *Id.*

¶21.    This Court affirmed the judgment of the trial court finding that State Farm, pursuant to its policy, was entitled to an offset; however F&G was not. This Court found the offset provision in F&G's policy exceedingly broad, "purporting to grant F&G the right to offset against payments made on behalf of the tortfeasor regardless of which party made the payments and regardless of to whom the payments were made." *Id.*

> The extent of a UM carrier's right to offset is to a certain degree dependent upon the provisions providing for the offset in the UM insurance contract. In *Dixie Ins. Co. v.*

*State Farm Mut. Auto. Ins. Co.*, 614 So.2d 918 (Miss. 1992), for example, this Court held that, under the provisions of Dixie's own policy, Dixie only had a right to offset liability payments which it itself had made. Accordingly, this Court held that the policy provision granted Dixie no right to offset liability payments made by State Farm. The holding in *Dixie* thus indicates that this Court will not infer a broader right of the insurer to offset when the language of the insurer's own policy provides for a more narrow right of offset than that for which it might legally provide.

699 So. 2d at 588.

¶22.    While the above cases are illustrative of this State's history of uninsured motorist law, the cases do not provide a clear answer as to whether the per person or the person accident limit should be used to determine if the tortfeasor is an uninsured motorist when there are two or more claimants under the same uninsured motorist policy. This Court may either compare the total amount of uninsured motorist coverage available ($600,000) to the tortfeasor's single liability limit ($300,000) and determine the tortfeasor is an underinsured motorist, or this Court may compare the amount available to each insured (in this fact scenario Mr. and Mrs. Wise are each entitled to $300,000) to the tortfeasor's single liability limit ($300,000) and determine that neither injured insured is entitled to uninsured motorist benefits. Cases from the North Carolina Court of Appeals provide guidance.

¶23.    In *North Carolina Farm Bureau Mut. Ins. Co. v. Gurley*, 532 S.E.2d 846 (N.C. Ct. App. 2000), the court addressed the issue of whether the per person or per accident limit was the applicable underinsured motorist limit. Kathryn Gurley and her two passengers, Sherry Gurley and Wendy Woolard, were injured in an automobile accident due to the negligence of Charles Fornes. *Id.* at 847. Fornes was insured by Allstate whose policy provided liability limits of $25,000 per person and $50,000 per accident. *Id.* Allstate tendered its $50,000 to the injured parties. *Id.* The Gurleys each received $17,000, and Wendy received $16,000. *Id.* Sherry had an uninsured motorist policy with Farm Bureau which provided

policy limits of $50,000 per person and $100,000 per accident. *Id.* Therefore, the injured parties sought

coverage under this uninsured motorist policy. *Id.*

¶24.    The North Carolina and Mississippi uninsured/underinsured motorist statutes and case law are very

similar.

> The North Carolina UIM statute necessitates a two-step analysis in resolving any UIM
> claims. First, we must address whether the insured is even eligible for UIM coverage. UIM
> coverage is available if two conditions are satisfied: (1) the negligent driver's automobile
> was an "underinsured highway vehicle"; and (2) the negligent driver's liability coverage has
> been exhausted. N.C. Gen.Stat. § 20-279.21(b)(4) (1999). Under our statute, an
> "underinsured highway vehicle" is:
>> a highway vehicle with respect to the ownership, maintenance, or use of
>> which, the sum of the limits of liability under all bodily injury liability bonds
>> and insurance policies applicable at the time of the accident is less than the
>> applicable limits of underinsured motorist coverage for the vehicle involved
>> in the accident and insured under the owner's policy.
> *Id.* The respective liability and UIM limits are thus directly compared to each other.

532 S.E.2d at 848. The court found that because Fornes's liability policy was less than the underinsured

coverage, the automobile was an "underinsured highway vehicle." *Id.* The court also held that because

Allstate tendered $50,000, its policy coverage had been exhausted. *Id.* Therefore, both conditions had

been met. *Id.*

¶25.    The court next had to determine how much coverage the insureds were entitled to receive under

the UIM policy. *Id.* North Carolina's statute outlines the limit as follows:

> [T]he limit of underinsured motorist coverage applicable to any claim is determined to be
> the difference between the amount paid to the claimant under the exhausted liability policy
> or policies and the *limit of underinsured motorist coverage applicable* to the
> motor vehicle involved in the accident. N.C. Gen.Stat. § 20-279.21(b)(4) (emphasis
> added).

*Id.* The court determined that the applicable UIM limit would not always be the same in every situation.

> Specifically, we conclude that the applicable UIM limit under N.C. Gen. Stat. § 20-
> 279.21(b)(4) will depend on two factors: (1) the number of claimants seeking coverage

14

under the UIM policy; and (2) whether the negligent driver's liability policy was exhausted pursuant to a per-person or per-accident cap.

*Id.* In *Gurley*, there were three injured parties compensated under the per accident limit; therefore, the applicable UIM limit was also the per accident limit.

> Our interpretation of the applicable UIM limit under the statute makes sense both logically and pragmatically. Logically, our interpretation provides internal consistency with the rest of the UIM statute. For instance, to determine whether UIM coverage even applies, the statute explicitly mandates that the UIM limits be compared directly with the negligent driver's liability limits. N.C. Gen. Stat. § 20-279.21(b)(4); *Harris v. Nationwide Mut. Ins. Co.,* 332 N.C. 184, 188, 420 S.E.2d 124, 127 (1992). Because our legislature requires a comparison between the liability and UIM limits in determining the *availability* of UIM coverage, we conclude the legislature intended a similar comparison in determining the *limit* of that coverage.

*Id.* at 849 (emphasis in original).

¶26.    In *Nationwide Mut. Ins. Co. v. Haight*, 566 S.E.2d 835 (N.C. Ct. App. 2002), Charles Holleman failed to yield the right-of-way to a vehicle driven by Sondra Haight and her three passengers. Holleman's vehicle was insured by Aetna with a policy providing liability coverage of $100,000 per person and $300,000 per accident. *Id.* at 836. Haight's vehicle was insured by Nationwide under a policy providing UIM coverage with a "combined single limit" of $500,000. *Id.* Aetna paid $100,000 each to Haight and the Estate of one of the passengers. *Id.* Haight and the Estate then made claims for UIM coverage pursuant to the Nationwide policy. *Id.* Nationwide tendered $200,000 to Haight and the Estate.

¶27.    Following the previous holding in *Gurley*, the court held:

> As we explained in *Gurley*, when the liability policy is exhausted pursuant to the per-accident limit, then the proper calculation of UIM coverage available is obtained by subtracting the per-accident limit of the tortfeasor's liability policy from the per-accident limit of the UIM policy. *See Id.* at 182, 532 S.E.2d at 849. Thus, in such a case, despite the language of the statute, only one calculation is performed for all claimants combined. Here, the liability policy was exhausted pursuant to the per-person limit for these

15

defendants, and we must decide how to offset those payments from the UIM "combined single limit," which more nearly resembles a per-accident limit.

\*\*\*\*

We believe that the statute and policy here require that we calculate the difference between the "combined single limit" of $500,000 under the UIM policy and the combined total actually paid to these two defendants by the liability carrier. Thus, the amount of UIM coverage available to defendants is $500,000 less $200,000, resulting in $300,000 to be shared on a *pro rata* basis.

*Haight*, 566 S.E.2d at 838.

¶28.    Using the North Carolina cases as guidance, Bostic's single liability limit of $300,000 is equivalent to a per accident limit. Comparing that limit to the per accident limit of the Wises' USAA policy of $600,000, Bostic's vehicle should be considered an underinsured motor vehicle pursuant to statute. Therefore, the Wises are entitled to uninsured motorists benefits.

¶29.    The Wises have already settled with Bostic for the full amount of his single liability limit of $300,000. They have also settled with Aswell's employer, Steel Service Corporation, for $4,000. A confidential settlement was reached between the Wises and the bar defendants; however, the Wises admitted to USAA that this settlement exceeded the total amount of available uninsured motorist benefits. Notwithstanding this admission, the Wises still contend that USAA is liable for $300,000 in uninsured motorist benefits (the difference between the total available UM benefits and the amount paid by the tortfeasor's liability carrier).

¶30.    The Wises' USAA policy provides in pertinent part:

PART C - UNINSURED MOTORISTS COVERAGE
INSURING AGREEMENT
UNINSURED MOTORISTS COVERAGE

We will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

16

1. **BI** sustained by a **covered person** and caused by an accident;

****

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**. WE will pay under this coverage *only after the limits of liability under any applicable liability bonds or policies, or deposits of cash or securities have been exhausted by payment of judgments or settlements*.

(emphasis added). According to the language of the policy, USAA is entitled to offset its UM payments by any judgments and settlements paid to the insureds. Therefore, the trial court was correct in determining that the Wises no longer have any uninsured motorist claims available to them. The Wises have admitted that they have been paid, through settlements, an amount which exceeds their available uninsured motorist benefits; therefore, USAA is no longer liable for any uninsured motorist benefits.

## II. WHETHER THE TRIAL COURT WAS CORRECT IN ITS DETERMINATION THAT THE WISES DID NOT HAVE A VALID BAD FAITH CLAIM.

¶31.    The preceding discussion under Issue I demonstrates without doubt that USAA had a legitimate and arguable basis in law for denying the Wises' claim for uninsured motorist benefits. *See Cossitt*, 541 So.2d at 443. Therefore, the trial judge was correct in determining the Wises did not have a valid bad faith claim. This issue is without merit.

## CONCLUSION

¶32.    The trial judge was correct in finding there were no USAA uninsured motorist benefits available to the Wises. The Wises exhausted the $600,000 available uninsured motorist benefits through other settlements; therefore, USAA is no longer liable for uninsured motorist benefits. The trial judge was also correct in finding the Wises did not have a valid bad faith claim against USAA. The judgment of the Circuit Court of the First Judicial District of Hinds County is affirmed.

¶33.    **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER AND COBB, JJ., CONCUR. EASLEY AND GRAVES, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY EASLEY, J. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶34. Based upon its incorrect reading of the applicable insurance policy language and its misapprehension of the facts and law, the majority erroneously affirms that the trial court's ruling that there were no uninsured motorist benefits available to the Wises. However, under the applicable language the uninsured motorist provision of the United Services Automobile Association ("USAA") policy and the statutory and case law of the settlements were apportioned among three injured individuals and **only** those settlements which resulted from the "owners and operators" of the "uninsured motor vehicle" as defined by the policy and statute may be used for the purposes of determining whether the applicable uninsured motorist maximum liability limits per accident have been exhausted. Since settling defendants Peoples Security Life Insurance Company ("Peoples Security"), JMH Operating Company ("JMH Operating"), American General Hospitality ("American General"), and Steel Service Corp. ("Steel Service") **were never** "owners and operators" of "uninsured motor vehicles," any settlements executed between these four defendants and the Wises cannot be used to offset the uninsured motorist coverage benefits provided by the USAA policy. For these reasons, I dissent.

¶35. In order to better understand why coverage has not been exhausted the applicable facts and law must be recited. The facts and applicable law can best be summarized through the following steps of analysis:

> (1) The Complaint filed by the Wises alleged injury to three individuals – Joseph Wise ("Joseph"); Charlene C. Wise ("Charlene"); and Elizabeth Ramsey Wise ("Elizabeth").

18

(2)     All three Plaintiffs were covered under insurance policies issued by USAA. By stacking these three policies, the uninsured motorist coverage amounts applicable to the Wises included $300,000 per person and a $600,000 maximum for the accident. *See **McDaniel v. Shaklee U.S., Inc.***, 807 So.2d 393, 396-99 (Miss. 2001); ***Fidelity & Guar. Underwriters, Inc. v. Earnest***, 699 So.2d 585, 588 (Miss. 1997); ***Dixie Ins. Co. v. State Farm Mut. Auto. Ins., Co.***, 614 So.2d 918, 921 (Miss. 1992); ***Cossitt v. Federated Guar. Mut. Ins. Co.***, 541 So.2d 436, 439-43 (Miss. 1989); ***Washington v. Georgia Am. Ins. Co.***, 540 So.2d 22, 25 (Miss. 1989); ***Wickline v. U.S. Fid. & Guar. Co.***, 530 So.2d 708, 712-13 (Miss. 1988). USAA has even admitted that these are in fact the policy limits under the uninsured motorist coverage. The policy further provides as to coverage that "we will pay compensatory damages which a covered person is legally entitled to recover **from the owner or operator of an uninsured motor vehicle.** . . . **[t]he owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.**" *See also* Miss. Code Ann. § 83-11-101. The policy defines "uninsured motor vehicle" as "a land motor vehicle or trailer," and gives several types and descriptions of those which are covered. *See also* Miss. Code Ann. § 83-11-103(c).

(3)     Defendant Steven Bostic was covered by a United States Fidelity & Guaranty Co. ("USF&G") policy which specifically provided that maximum liability limits per **"EACH ACCIDENT"** totaled $300,000. The USF&G policy states in clear language under "**LIMIT OF LIABILITY**" that despite the substantive law of the State where the accident occurred, "it will not change [its] total limit of liability." Even USAA admits in its Memorandum Brief in Support of its Motion for Summary Judgment that the USF&G policy had a "single limit of liability coverage of $300,000." As this is the policy language of the insurance contract, this Court must adhere to the plain meaning of the language and find that the $300,000 liability limits provided were per "EACH ACCIDENT." *McDaniel*, 807 So.2d at 396-99; *Earnest*, 699 So.2d at 588; *Dixie Ins.*, 614 So.2d at 922; *Cossitt*, 541 So.2d at 439-43; *Wickline*, 530 So.2d at 717.

(4)     Defendant Alfred Aswell ("Aswell"), the intoxicated driver who injured the Wises, had no personal insurance. However, Defendant Steel Services Corp. ("Steel Services"), Aswell's employer, was also named as a Defendant in the suit. Since Steel Services did not own the auto which Aswell drove, insure the auto in which Aswell drove, or give Aswell permission to drive the automobile, it is clear that any liability policy invoked on behalf of Steel Services would be a general liability policy.

(5)     Defendants Peoples Security Life Insurance Company ("Peoples Security"), JMH Operating Company ("JMH Operating"), and American General Hospitality

19

("American General") were either operators or owners of the Ramada Inn. These three defendants were covered by a general liability policy issued to insure the premises and operations of the Ramada Inn including the Ramada Inn bar. No vehicles were covered by this policy, and certainly the vehicle driven by Aswell was not insured by this policy.

(6)     Based upon these facts, the uninsured motorist coverage provided by the USAA policy had been invoked by the fact that the USF&G policy carried $300,000 **per accident** and the USAA policy carried $300,000 per person and $600,000 **per accident** ($300,000 : $600,000). *See McDaniel*, 807 So.2d at 396-99; *Earnest*, 699 So.2d at 588; *Dixie Ins.*, 614 So.2d at 921; *Earnest*, 699 So.2d at 588; *Dixie Ins.*, 614 So.2d at 921; *Cossitt*, 541 So.2d at 439-43; *Wickline*, 530 So.2d at 712-13. Once the uninsured motorist provision is invoked, a determination then must be made as to whether the plaintiffs have exhausted their coverage – meaning received more than $600,000 in compensation from "owners and operators" of the "uninsured motor vehicle" as a result of the accident. *See Earnest*, 699 So.2d at 588; *Wickline*, 530 So.2d 708.

(7)     The three Plaintiffs, together, settled with USF&G for a total of $300,000 collectively. However, **this $300,000 in damages was allocated between the three Plaintiffs. This $300,000 encompassed the maximum liability limits of USF&G per accident, not per person.** Joseph's portion of the settlement totaled $225,000; Charlene's portion of the settlement totaled $55,000; and Elizabeth's portion of the settlement totaled $20,000.

(8)     The three Plaintiffs, together, also settled with Steel Services, Aswell's employer, for $4,000, collectively. This $4,000 was allocated between the three Plaintiffs even though the record is silent as to the exact allocation amounts. However, this $4,000 settlement does not apply in assessing the available funds in the USAA uninsured motorist coverage provisions, **since Steel Services was in no way an "owner or operator" of the "uninsured motor vehicle" as specifically provided by the USAA policy language**. *See* Miss. Code Ann. § 83-11-103(c) (Rev. 1999); *Earnest*, 699 So.2d at 589; *Miller v. Allstate Ins. Co.*, 631 So.2d 789, 791 (Miss. 1994); *Dixie Ins.*, 614 So.2d at 922; *Cossitt*, 541 So.2d at 439-43; *Wickline*, 530 So.2d at 717; *State Farm Mut. Auto Ins. Co. v. Daughdrill*, 474 So.2d 1048, 1052-54 (Miss. 1985). **Since Steel Services, Corp. was not an "owner or operator" of the "uninsured motor vehicle," the $4,000 settlement may not be used to reduce the available uninsured motorist funds.**

(9)     The three Plaintiffs, together, settled with Peoples Security, JMH Operating, and American General, the three entities responsible for the Ramada Inn's ownership and operation. The amount of the settlement and the allocation among the three

Plaintiffs was not disclosed in the record. However, the exact amount or allocation of the settlement is not necessary for the analysis. **Since Peoples Security, JMH Operating, and American General were not "owners or operators" of the "uninsured motor vehicle," any settlement executed with the Plaintiffs may not be used to reduce the available uninsured motorist benefits provided for in the USAA policy.** *See* Miss. Code Ann. § 83-11-103(c); *Earnest*, 699 So.2d at 589; *Miller*, 631 So.2d at 791; *Dixie Ins.*, 614 So.2d at 922; *Cossitt*, 541 So.2d at 439-43; *Wickline*, 530 So.2d at 717; *Daughdrill*, 474 So.2d at 1052-54.

(10)   USAA eventually paid $1,000 to the Wises for medical payments. Although this may have been inadvertent, it still must be considered in reducing the amount of damages available to the Plaintiffs.

(11)   In sum, the Plaintiffs have received $301,000 in recovered monies that must be used to reduce the $600,000 maximum per accident limits provided by the USAA policy. The Plaintiffs, collectively, are entitled to recover $299,000 in uninsured motorist benefits from USAA. *See Harris v. Magee*, 573 So.2d 646 (Miss. 1990).

¶36.   The majority's analysis went awry once it failed to correctly apply the USAA policy language and the uninsured motorist statute. The majority fails to adhere to the "owner or operator" policy language. Specifically, what the majority misses in its analysis is the following:

### PART C – UNINSURED MOTORISTS COVERAGE

**********

**INSURING AGREEMENT**

**UNINSURED MOTORISTS COVERAGE**

We will pay compensatory damages which a covered person is legally entitled to recover from **the owner or operator of an insured motor vehicle** . . .
The owner's or operator's liability for these damages **must arise out of the ownership, maintenance or use of the uninsured motor vehicles.**

(emphasis added). Clearly, Peoples Security, JMH Operating, American General, and Steel Services **were never** "owners and operators" of the "uninsured motor vehicle." None of these four settling

21

defendants had any relation to the "uninsured motor vehicle." By USAA's very policy language, any settlements executed with these defendants do not operate to reduce the recoverable uninsured benefits available to the Wises.

¶37. These four defendants had no connection to the "uninsured motor vehicle" which Aswell was driving when the accident occurred, and all were covered by general liability policies which do not provide for any sort of automobile coverage. The majority's holding is troubling since it finds that uninsured motorist benefits may be offset by compensation paid to the plaintiffs by general liability policies. That holding is contrary to the very purpose of the uninsured motorist statute. It is totally absurd and contrary to the law to require offset for benefits received from persons other than "owners and operators" of "uninsured motor vehicles" and who have no connection whatsoever to the ownership, operation, supervision, or maintenance of the "uninsured motor vehicle." I would reverse the circuit court's judgment and remand this case for further proceedings.

¶38. For the above-stated reasons, I dissent.

**EASLEY, J., JOINS THIS OPINION IN PART**.